NICHOLS KASTER, LLP
Matthew C. Helland, CA Bar No. 250451
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Phone: (415) 277-7235
Fax: (415) 277-7238

NICHOLS KASTER, PLLP
E. Michelle Drake, MN Bar No. 0387366*
drake@nka.com
Megan D. Yelle, MN Bar No. 0390870*
myelle@nka.com
John G. Albanese, MN Bar No. 0395882*
jalbanese@nka.com
4600 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb, NY Bar No. JG-7905*
nyjg@aol.com
Dana L. Gottlieb, NY Bar No. DG-6151*
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, NY 10003
Phone: (212) 228-9795
Fax: (212) 982-6284
*pro hac vice applications forthcoming
Attorneys for Individual and Representative Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN HEATON, individually, as a representative of the classes, and on behalf of the general public<br><br>                        Plaintiff,<br><br>v.<br><br>SOCIAL FINANCE, INC.,<br><br>                        Defendant. | Case No.: 14-cv-5191<br>**CLASS ACTION COMPLAINT**<br>**FOR DAMAGES**<br>(1) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681q;<br>(2) Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(f);<br>(3) Violations of Cal. Civ. Code § 1785.19;<br>(4) Violations of Cal. Civ. Code § 1785.31;<br>(5) Violations of the California Unfair Competition Law (Business and Professional Code § 17200, *et seq.*)<br>**DEMAND FOR JURY TRIAL** |

Shawn Heaton ("Heaton" or "Plaintiff"), by and through his attorneys, on behalf of himself and the classes set forth below, brings the following Class Action Complaint against Social Finance, Inc. ("SoFi" or "Defendant").

## INTRODUCTION

1.    This consumer class action is brought under the federal Fair Credit Reporting Act ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), and the California Unfair Competition Law ("UCL") against a lender who routinely procures credit reports without a permissible purpose and under false pretenses.

2.    Specifically, SoFi falsely represents to prospective borrowers that SoFi will only do a soft inquiry into the prospective borrower's credit.  SoFi further represents that the inquiry SoFi will do will not affect the prospective borrower's credit score.  In reality, SoFi does a hard credit pull that adversely affects the potential borrower's credit score.

3.    SoFi's misleading conduct violates federal and California law.

4.    As Defendant's misleading and illegal practices are routine and systematic, Plaintiff asserts claims for actual, statutory and punitive damages, as well as equitable relief.

## THE PARTIES

5.    Plaintiff Shawn Heaton is an individual person and a resident of Irving, Texas.

6.    Defendant Social Finance, Inc. is a California corporation headquartered in San Francisco, California.  SoFi is in the business of refinancing student loans, and touts itself as the "largest provider of student loan refinancing" with $1 billion in loans funded to date.  https://www.sofi.com/ (attached Exhibit A) (last visited November 17, 2014).

## JURISDICTION AND VENUE

7.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and further possesses supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

CLASS ACTION COMPLAINT

8.     Jurisdiction is also proper pursuant to 28 U.S.C. § 1332(d)(2) as at least one member of the putative class and Defendant are citizens of different states and the amount in controversy exceeds $5,000,000.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

**INTRADISTRICT STATEMENT**

10.     Pursuant to L.R. 3-2(c) and (d), this action is properly assigned to the San Francisco Division of the Northern District of California because a substantial portion of the events giving rise to the dispute occurred in San Francisco County, California.

**THE FCRA'S PRIVACY PROTECTIONS**

11.     Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

12.     In order to protect consumer privacy, the FCRA prohibits users from obtaining consumer reports unless the user has a permissible purpose for procuring the report, as defined in the statute.  Specifically, the FCRA, 15 U.S.C. § 1681b(f),  provides:

> A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

13.     The FCRA also prohibits users from obtaining "information on a consumer from a consumer reporting agency under false pretenses."  15 U.S.C. § 1681q.

14.     Similarly, the CCRAA prohibits users who lack a permissible purpose from "knowingly and willfully obtain[ing] access to a file" or "knowingly and willfully obtain[ing] data from a file."  Cal. Civil Code § 1785.19.  The statute also prevents credit reports from being obtained under false pretenses.  Cal. Civil Code § 1785.31(a)(3).

15.     One permissible purpose for obtaining a credit report is for use in connection with a credit transaction involving a consumer.  *See* 15 U.S.C. § 1681a(3)(A).

-3-

16.     However, in order to balance consumer privacy against the public interest in creditors being able to make intelligent offers to extend credit, the FCRA differentiates between credit reports that are obtained for the purpose of being used in a credit transaction that was *initiated by the consumer* and credit reports that are obtained for the purpose of being used in a credit transaction where the credit transaction was *not initiated* by the consumer.

17.     One example of a situation where an entity might procure a credit report in connection with a credit transaction not initiated by the consumer is in a situation where the entity procuring the report intends to make a firm offer of credit to the consumer.  *See* 15 U.S.C. § 1681b(c)(1)(B).

18.     In all circumstances relating to reports procured in connection with credit transactions, if the consumer has neither *initiated* a *transaction* nor authorized the provision of a full report, the entity procuring the report can see only limited information about the consumer.  *See* 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c).

19.     Specifically, pursuant to § 1681b(c) a user of consumer reports who is pulling a report for the purpose of using the information in "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer" in a situation where no *transaction* was *initiated* may not procure an entire credit report.

20.     Rather, such an entity may *only* receive the following information:

> (A) the name and address of a consumer;
> (B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
> (C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity

15 U.S.C. § 1681b(c)(2).

21.     Moreover, the inquiries from entities in circumstances where the consumer neither initiated the transaction nor provided consent for a full report to be procured **cannot** adversely affect a consumer's credit score or impact the consumer's ability to procure future credit, because such inquiries are viewable only by the consumer. *See* 15 U.S.C. § 1681b(c)(3) ("a consumer reporting agency shall not furnish to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer.").

## RECEIVING GENERAL INFORMATION ABOUT PRICES AND PRODUCTS IS NOT INITIATING A TRANSACTION

22.     It is well established that merely inquiring about the possibility of a future transaction, or shopping for rates, is insufficient to satisfy the requirement of the FCRA for a creditor to initiate the kind of full credit inquiry that is allowed when a consumer has initiated a transaction.

23.     Over fifteen years ago, the FTC opined that a customer who "'comes to an automobile dealership and requests information' from a salesman about one or more automobiles" had not initiated a transaction sufficient to allow the dealership to pull a credit report.    FTC Letter to Coffey (Feb. 11, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-coffey-02-11-98    (last visited November 17, 2014) (attached as Exhibit B).

24.     The FTC reasoned that more than a mere inquiry, or "shopping" behavior, was required for a transaction to have been initiated.  Specifically, the FTC stated that "a request for general information about products and prices offered does not involve a business transaction initiated by the consumer." *Id.*

25.     Instead, the FTC opined that a user "may obtain a [consumer] report only in those circumstances in which the consumer clearly understands that he or she is initiating the purchase or lease of a vehicle and the seller has a legitimate business need for the consumer report information in order to complete the transaction." *Id.*

26.     The FTC continued: "Only in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer report information may the dealer obtain a report without written permission." *Id.*

## **HARD AND SOFT CREDIT PULLS**

27.     Colloquially speaking, inquiries related to those transactions initiated by the consumer are known as "hard inquiries" or "hard pulls."   Inquiries not related to transactions initiated by the consumer are known as "soft inquiries" or "soft pulls."

28.     Hard pulls are visible to third parties who obtain a consumer credit report.

29.     Each hard pull can result in a reduction of a credit score by up to five points.  *See Harkins v. Diversified Collection Servs., Inc.*, No. CIV. PJM 12-1229, 2012 WL 5928997, at *1 n.1 (D. Md. Nov. 26, 2012).

30.     Creditors often use the number of hard inquiries on a consumer's credit report as a basis to deny an extension of credit.

31.     A "soft pull," by contrast, is a credit inquiry that is not visible to anyone other than the consumer, and which does not affect the consumer's credit score.  Soft inquiries include inquiries made when a consumer checks his or her own credit report, inquiries made by businesses with which the consumer already does business, such as a mortgage servicer reviewing the status of the consumer's account and, as discussed above, and inquiries made by credit card companies or insurance companies to make firm offers of credit even when no *transaction* has been *initiated* by a consumer.  "Credit Report Q&A"  http://www.myfico.com/crediteducation/questions/inquiry-credit-score.aspx  (last visited November 6, 2014) (attached as Exhibit C).

32.     A soft pull inquiry is not visible to other users and does not affect a consumer's credit score.  *See* "Hard and Soft Credit Inquiries, and How One Hurts Your Credit Score." (Dec. 6, 2008)  http://consumerist.com/2008/12/06/hard-and-soft-credit-

inquiries-and-how-one-hurts-your-credit-score/ (last visited November 6, 2014) (attached as Exhibit D).

33. As described in further detail below, Defendant encouraged potential borrowers like Plaintiff to "shop around" and view its available loan refinancing options by claiming that potential borrowers could engage in such shopping behavior without causing any harm to their credit scores.

34. In order to encourage such shopping behavior, Defendant represented that it would only do a limited soft pull before showing consumers available loan rates. Defendant specifically represented that any credit pull it did would not affect the consumer's credit score.

35. Deceitfully, and in direct contradiction to its own representations, however, Defendant did a hard pull, viewing more data than it was allowed to view under the law, viewing more data than it told Plaintiff it would view, and, in the process, negatively affecting Plaintiff's credit score and ability to access future credit.

## DEFENDANT'S REPRESENTATIONS ABOUT ITS LOAN PROCESS

36. The SoFi website requires a potential borrower to provide personal information, including name, address, university, employer, and the amount of the loan they are seeking to refinance. The potential borrower must provide this information before they are able to view available interest rates and loan products. The potential borrower is told that entering this information and proceeding to check the available interest rates and loan products "will not affect your credit score." *See* Student Loan Step 1 (Exhibit E).

37. Before a prospective borrower can view their interest rates, SoFi has the potential borrower consent to a limited soft pull credit inquiry only. Prior to approximately July 11, 2014, SoFi explicitly represented that this credit inquiry was a "Soft Credit Pull" and that "[t]his inquiry will not affect your credit score." (Exhibit F.) As described further below, on or about July 11, 2014, SoFi revised its disclosure to remove the reference to the "Soft Credit Pull," but the disclosure continues to say

explicitly that "Checking your rate will not affect your credit score." (Exhibit G.)

38.     In other words, at all times relevant to this action, SoFi has affirmatively represented to prospective borrowers that SoFi will only perform a soft credit pull that will not affect the prospective borrower's credit score before the potential borrower can view his or her refinancing options and interest rates.

39.     SoFi markets itself in part based on the fact that it allows potential borrowers to view rates without completing a full hard pull credit inquiry.

40.     In a December 10, 2013 blog post titled "Student Loan Smarts: How Student Loans Affect Your Credit Score," a SoFi representative advised borrowers:

> If you really want to avoid inquiry overload, do your homework before applying for a loan.  Private lenders should state the range of rates they offer on their websites, as well as general eligibility criteria (so you have a good idea whether you'll qualify before you apply).  And ask if they can tell you the interest rate you would receive without doing a "hard" credit pull, which may affect your score.  *For example, if you qualify for pre-approval with SoFi, you can see the interest rate you'd get before a formal credit check is logged.*  You can't *get* a loan without an *eventual* inquiry, but this service allows borrowers to shop around *first*.

Exhibit H (emphasis added)  https://www.sofi.com/blog/student-loan-smarts-student-loans-affect-credit-score/ (last visited November 6, 2014).

41.     Further, on June 3, 2014, in response to a comment on a SoFi blog post, a SoFi representative stated:  "There's no cost to refinance your loans with SoFi; we do not charge any application or origination fees.  You can go through our instant preapproval process (*which initiates a soft credit pull only*) to see which rates you would qualify for and determine if you'd save on your monthly payment, total payment, or both."  Exhibit I (emphasis added), https://www.sofi.com/blog/interest-rate-matters-graduate-student-loans/ (last visited November 6, 2014).

42.     SoFi claims that it will only perform a hard credit after the potential borrower has viewed the refinancing options and *applied* for a specific refinancing plan. For example, on its personal loan application consent, SoFi states: "Checking your rate will not affect your credit score.  If you choose a product *and apply for* a loan, we will

-8-

request your credit report from one or more credit bureaus." (emphasis added) (Exhibit J).

43.     Notably, in order to complete the process of applying for a loan, a prospective borrower must provide substantially more information than that required to merely review rates.   Specifically, the prospective borrower must upload documents supporting the prospective borrower's representation about the amount of the loans, as well as documentation verifying the borrower's prospective identity.

44.     Despite its representations that it will only do a hard pull a to obtain a full credit report if and when a prospective borrower actually applies for a loan, in order to gain as much information about consumers as possible, SoFi actually does a hard pull full credit inquiry before any application has been made.

45.     SoFi therefore does a full credit inquiry before any *transaction* has been *initiated* by the consumer.

46.     SoFi further does a full credit inquiry without the consumer's consent, because the consumer has only consented to a soft pull inquiry, which will not affect the consumer's credit score.

47.     SoFi further lacks a legitimate business purpose for performing a full credit inquiry, because it affirmatively represented to consumers that they could view rates without affecting their credit scores, and that SoFi would only perform a hard credit pull if the consumer actually applied for a loan.

48.     In adopting these practices, SoFi obtains more information than it told the consumer it would obtain, thereby falsely inducing consumers to provide SoFi with the personally identifying information SoFi needed in order to do the pull in the first instance.

49.     In putting its business interests ahead of consumers' rights to privacy and to protect their credit scores, SoFi routinely and systematically breaks the law.

## PLAINTIFF HEATON'S EXPERIENCE WITH DEFENDANT

50.     On or about July 9, 2014, Plaintiff went to SoFi's website because he was interested in refinancing his student loans.

51.     Before Plaintiff could see the interest rates and refinancing plans that SoFi would offer him, SoFi required that Plaintiff consent to a "Soft Credit Pull." The consent form stated: "I/we understand that this is an eligibility inquiry for credit and authorize SoFi to obtain credit information from a credit reporting agency for purposes of this eligibility inquiry." (Exhibit F.)  It further added: "This inquiry will not affect your credit score." (*Id.*)

52.     Plaintiff consented to the purported soft credit pull.

53.     Plaintiff viewed the interest rates and plans available to him for both student loans and personal loans, but never completed an application for a loan and never uploaded any of the required documents.

54.     Based on the numerous representations on Defendant's website that there would be only soft credit pull or inquiry unless or until he applied for credit, Heaton had no reason to believe SoFi had done or would do a hard inquiry on his credit.

55.     Heaton never gave SoFi consent to do a full "hard pull" credit inquiry; all Heaton consented to do was to allow an inquiry that would "not affect his credit score." *See* Exhibit F.

56.     Because Heaton never completed the application process and only viewed available rates, he did not initiate any credit transaction with SoFi.

57.     Moreover, even if Heaton could be said to have "initiated" a "transaction," with SoFi, which he cannot, the only transaction he could have initiated would be one which would have had as one of its explicit conditions that SoFi would only conduct the kind of limited soft credit inquiry that could not affect Heaton's credit score.  Hence, SoFi had no legitimate purpose to do a hard pull on Heaton's full report.

58.     Plaintiff diligently monitors his credit report and subscribes to a credit monitoring service through Experian.  When Plaintiff viewed his Experian credit report on approximately July 9, 2014, the report showed that SoFi made both a soft inquiry and a hard inquiry on July 9, 2014.

59.     Plaintiff did not consent to a hard credit pull and was misled by SoFi's representations that it would only do a soft pull.

60.     Plaintiff would have withheld his consent and would not have consented to Defendant making a hard inquiry about his credit.

61.     Upon learning of the hard pull, Plaintiff immediately complained to SoFi and asked SoFi to contact Experian to remove the inquiry.  SoFi refused to do so.

62.     Within two days of Plaintiff's complaint, however, SoFi revised its disclosure.  The revised disclosure no longer references a "Soft Credit Pull."  However, the revised disclosure continues to misleadingly and inaccurately state that "Checking your rate will not affect your credit score."  Exhibit G.

63.     SoFi's website still also contains the misleading representations about customers being able to shop for rates without damaging their credit which are contained in Paragraphs 40-41 herein.

64.     In August 2014, Plaintiff applied for a credit card with Credit One Bank.

65.     Credit One Bank denied Plaintiff's credit application in part because there were too many recent inquiries on Plaintiff's Experian credit report.  One of those recent inquiries was the inquiry from SoFi.

66.     Plaintiff's credit score has decreased as a result of SoFi's unauthorized hard inquiry into Plaintiff's credit.

67.     Plaintiff has refrained from applying for other loans because he is worried that those applications will further decrease his credit score.

68.     Plaintiff has suffered emotional distress as a result of SoFi's unauthorized and deceitful hard inquiry and the continued effect of SoFi's hard pull on his credit score is constant source of stress and worry for Plaintiff.

**DEFENDANT'S CONDUCT WAS WILLFUL**

69.     Defendant acted knowingly and willfully.

70.     The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant.

71.     Defendant violated a clear statutory mandate set forth in 15 U.S.C. § 1681q.

72.     Defendant knew the difference between a hard credit inquiry and a soft credit inquiry.

73.     Defendant knew that a hard credit inquiry reduces a consumer's credit score and that consumers would be hesitant to take any steps on Defendant's website if the consumers believed taking such a step might lead to a hard inquiry and thereby affect their credit scores.

74.     Defendant falsely represented to borrowers that it would only do a soft credit inquiry in order to induce borrowers to begin the application process by viewing their available interest rates.

75.     In sharp contrast to the kind of clearly initiated transaction described by the FTC in *Coffey* described above in ¶¶ 23-26, SoFi's business model is intentionally designed to mislead the consumer about what SoFi will do in response to the customer making an inquiry about SoFi's available rates.

76.     As evidenced by the statements on their website and the fact that both a hard and soft pull appeared on Plaintiff's credit report, Defendant is well aware of the differences between a soft credit pull and a hard credit pull.  Defendant knows that a hard credit pull will decrease a borrower's credit score.

77.     Defendant also knows, however, that borrowers are very concerned about protecting their credit scores, and therefore entices borrowers to view its offers by falsely representing that the borrower can view his or her refinancing options by only authorizing a soft credit pull.

78.     Given that knowledge, SoFi explicitly represents to consumers that they can view loan rates (the equivalent of entering the showroom to shop for an automobile) without it having any effect on their credit scores.  This is indicative of SoFi's knowledge that a customer's act of viewing rates is not sufficient to constitute the customer initiating a credit transaction.

-12-

79. Yet, without respect to its representations, SoFi pulls full hard credit reports on consumers who choose only to view SoFi's rates and available loan products, and but do not complete the loan application process.

80. Consumer complaints to Defendant, including Plaintiff's complaint, put Defendant on further notice of the deleterious impact of its false representations, yet Defendant made no meaningful change to its practices, electing instead to only remove the reference to "soft inquiries" from its website, while still falsely representing that the kind of pull it would do would not affect the consumer's credit score.

81. Borrowers concerned about the impact on their credit scores have complained repeatedly about SoFi's deceptive practices regarding credit inquiries:

    a. "I was on the website and input general information regarding my loan options. Prior to giving me results, my [social security number] was required. Since I checked off a disclosure about a soft pull, I keyed my [social security number] just to get my loan option results. I NEVER completed the application process. Low and behold [sic], the next day I received a new inquiry alert. Do NOT bother with this on the basis of it misleading consumers!!!!" Exhibit K, https://www.creditkarma.com/reviews/personal-loan/single/id/sofi-personal-loans (last visited November 6, 2014).

    b. "I was not actually shopping for loans but was just curious about rates, and it DEFINITELY said soft pull or I never would have clicked. I checked my report today and I have a hard pull on Experian from 7/7. This is ridiculous." Exhibit L, http://ficoforums.myfico.com/t5/Student-Loans/Warning-Sofi-com-says-they-do-a-soft-inquiry-but-it-is-a-hard/td-p/3237658 (last visited November 6, 2014).

82. Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information under the false pretense that it would not affect consumers' credit scores.

-13-

83.     By adopting such a policy of making such misleading representations, Defendant voluntarily ran a risk of violating the law substantially greater than any risk associated with a statutory reading that was merely careless.

84.     By making hard inquiries into the credit reports of Plaintiff and the class members, Defendant has damaged borrowers' credit scores and creditworthiness.

## CLASS ACTION ALLEGATIONS

85.     Plaintiff asserts his claims on behalf of the Rule 23(b)(3) "Damages Class" defined as follows:

> All individuals who only completed the portion of Defendant's process authorizing a credit pull that would not affect their credit scores, who did not complete an application for a specific loan product, and on whom Defendant made a hard credit inquiry in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

86.     Plaintiff asserts his claims on behalf of the Rule 23(b)(2) "Injunctive Relief Class" defined as follows:

> All individuals who only completed the portion of Defendant's process authorizing a credit pull that would not affect their credit scores, who did not completion an application for a specific loan product, and on whom Defendant made a hard credit inquiry in the four years predating the filing of this Complaint and continuing through the date the class list is prepared.

87.     Plaintiff also asserts his claims for injunctive relief on behalf of a Rule 23(b)(2) "Injunctive Relief Two-Year Subclass" defined as follows:

> All individuals who only completed the portion of Defendant's process authorizing a credit pull that would not affect their credit scores, who did not complete an application for a specific loan product, and on whom Defendant made a hard credit inquiry in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

88.     Numerosity:    The Classes are so numerous that joinder of all class members is impracticable.   Defendant is the nation's largest provider of student loan

refinancing and has done hard credit pulls on thousands of consumers falling within the class definitions.

89.     Typicality:     Plaintiff's claims are typical of the class members' claims. The FCRA, CCRAA, and UCL violations committed by Defendant were committed pursuant to uniform policies and procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

90.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

91.     Commonality:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including without limitation:

(a)     Whether Defendant procured credit reports under false pretenses;

(b)     whether Defendant procured credit reports without a permissible purpose under the FCRA;

(c)     whether Defendant's conduct was willful under the FCRA;

(d)     whether Defendant accessed or obtained data from consumer files in violation of the CCRAA;

(e)     whether Defendant's conduct was unlawful, unfair, or fraudulent under the UCL;

(f)     the appropriateness and proper measure of statutory damages; and

(g)     the appropriate scope of injunctive relief.

92.     This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

93.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other

-15-

1    available methods for the fair and efficient adjudication of this litigation.  Defendant's

2    conduct described in this Complaint stems from common and uniform policies and

3    practices, resulting in common violations of the FCRA and the CCRAA.  Members of the

4    Classes do not have an interest in pursuing separate actions against Defendant, as the

5    amount of each class member's individual claim is small compared to the expense and

6    burden of individual prosecution, and Plaintiff is unaware of any similar claims brought

7    against Defendant by any members of the Classes on an individual basis.   Class

8    certification also will obviate the need for unduly duplicative litigation that might result in

9    inconsistent judgments concerning Defendant's practices.  Moreover, management of this

10   action as a class action will not present any likely difficulties.  In the interests of justice

11   and judicial efficiency, it would be desirable to concentrate the litigation of all class

12   members' claims in a single forum.

**CLAIMS FOR RELIEF**
**COUNT I: 15 U.S.C. § 1681q**
**Obtaining Consumer Information Under False Pretenses**
**(On behalf of the Damages Class)**

16       94.    Defendant represented to Plaintiff and the Damages Class that it would

17   perform a soft inquiry only into Plaintiff and the Damages Class members' credit.

18   Defendant further represented that the inquiry it would do would not affect Damages Class

19   members' credit scores.  These representations were false.

20       95.    Defendant violated the FCRA by knowingly and willfully procuring

21   information on Plaintiff and Damages Class members under false pretenses. *See* 15 U.S.C.

22   § 1681q.

23       96.    Defendant acted knowingly and willfully.   Defendant's knowing and

24   willful conduct is reflected by, among other things:

25            (a)    The FCRA was enacted in 1970; Defendant has had over 40 years

26                   to become compliant;

27            (b)    Defendant violated a clear statutory mandate set forth in 15 U.S.C.

28                   § 1681q;

-16-

(c)    Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

(d)    Defendant knew that a hard credit inquiry reduces a consumer's credit score;

(e)    Defendant falsely represented to borrowers that it would only do a soft credit inquiry in order to induce borrowers to begin the application process by viewing their interest rates;

(f)    Consumer complaints to Defendant put Defendant on notice about its false representations;

(g)    Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information under false pretenses; and

(h)    By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

97.    Plaintiff and the Damages Class are entitled to actual damages, plus statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the Damages Class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the Damages Class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT II: 15 U.S.C. § 1681b(f)**
**Obtaining Consumer Reports Without a Permissible Purpose**
**(On Behalf of the Damages Class)**

98.    Defendant represented to Plaintiff and the Damages Class that it would perform a soft inquiry only into Plaintiff and the Damages Class members' credit.

99.    Plaintiff and members of the Damages Class did not authorize Defendant to do a hard pull of their credit reports.

100.    It was an explicit term of Plaintiff and members of the Damages Class's interactions with Defendant that Defendant would not perform a hard pull of Plaintiff and the Damages Class members' credit reports.

101.    Plaintiff and members of the Damages Class did not initiate any credit transaction with Defendant as they did not complete the application for a specific loan product. *See* FTC Letter to Coffey, Exhibit B.

102.    Plaintiff and members of the Damages Class did not initiate any credit transaction because it was a material term of any transaction that Defendant would not initiate a hard pull of Plaintiff and the Damages Class members' credit reports. *See Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 99-100 (2d Cir. 1999).

103.    In light of Defendant's representations and Plaintiff's responses thereto, Defendant lacked a permissible purpose to obtain full credit reports on Plaintiff and the Damages Class.

104.    Defendant violated the FCRA by willfully procuring consumer reports on Plaintiff and Damages Class members without a permissible purpose. *See* 15 U.S.C. § 1681b(f).

105.    Defendant acted knowingly or recklessly.  Defendant's willful conduct is reflected by, among other things:

        (a)    The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

        (b)    Defendant violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(f);

        (c)    Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

        (d)    Defendant knew that a hard credit inquiry reduces a consumer's credit score;

        (e)    Defendant falsely represented to borrowers that it would only do a soft credit inquiry in order to induce borrowers to begin the

-18-

1                    application process while still enabling Defendant to gain access to

2                    information that would allow it to calibrate its rates based on

3                    detailed information about the consumer's credit history;

4         (f)      Defendant falsely represented to borrowers that it would only do a

5                    soft credit inquiry in order to reduce its own costs in connection

6                    with procuring reports;

7         (g)     Consumer complaints to Defendant put Defendant on notice about

8                    it lacked a permissible purpose to do a hard credit pull;

9         (h)     Despite the pellucid statutory text and there being a depth of

10                  guidance, Defendant systematically procured consumer information

11                  without a permissible purpose; and

12         (i)      By adopting such a policy, Defendant voluntarily ran a risk of

13                  violating the law substantially greater than the risk associated with

14                  a reading that was merely careless.

15      106.    Plaintiff and the Damages Class are entitled to actual damages, plus

16 statutory damages of not less than $100 and not more than $1,000 for each and every one

17 of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).  Plaintiff and the Damages

18 Class members are also entitled to punitive damages for these violations, pursuant to 15

19 U.S.C. § 1681n(a)(2).  Plaintiff and the Damages Class members are further entitled to

20 recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

21      107.    In the alternative, Defendant acted negligently.  Plaintiff and the Damages

22 Class are entitled to entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1).

23 Plaintiff and the Damages Class members are further entitled to recover their costs and

24 attorneys' fees, pursuant to 15 U.S.C. § 1681o(a)(2).

25                            **COUNT III: Cal Civil Code § 1785.19**

26             **Unlawfully Accessing or Obtaining Data From Consumer Files**

           **(On Behalf of the Damages Class; and, for injunctive relief only, on Behalf of the**

27                     **Injunctive Relief Two-Year Subclass)**

28

CLASS ACTION COMPLAINT

108. Defendant represented to Plaintiff, the Damages Class, and the Subclass that it would perform a soft inquiry only into Plaintiff and the class members' credit.

109. Plaintiff and class members did not authorize Defendant to do a hard pull of their credit reports.

110. It was an explicit term of Plaintiff and class members' interactions with Defendant that Defendant would not perform a hard pull of Plaintiff and the class members' credit reports.

111. Defendant lacked any permissible purpose to obtain the credit reports under Cal. Civil Code § 1785.11.

112. Defendant knowingly and willfully access or obtained data from the consumer files of Plaintiff and the class members in violation of Cal. Civil Code § 1785.19.

113. Defendant acted knowingly and willfully.  Defendant's knowing willful conduct is reflected by, among other things:

    (a) Cal. Civil Code § 1785.19 was enacted in 1990; Defendant has had over 20 years to become compliant;

    (b) Defendant violated a clear statutory mandate set forth in Cal. Civil Code § 1785.19;

    (c) Defendant knew the difference between a hard credit inquiry and a soft credit inquiry;

    (d) Defendant knew that a hard credit inquiry reduces a consumer's credit score;

    (j) Defendant falsely represented to borrowers that it would only do a soft credit inquiry in order to induce borrowers to begin the application process while still enabling Defendant to gain access to information that would allow it to calibrate its rates based on detailed information about the consumer's credit history;

CLASS ACTION COMPLAINT

(e)     Defendant falsely represented to borrowers that it would only do a soft credit inquiry in order to reduce its own costs in connection with procuring reports;

(f)     Consumer complaints to Defendant put Defendant on notice about it lacked a permissible purpose to do a hard credit pull; and

(g)     Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer information without a permissible purpose.

114.     Plaintiff and the Damages Class are entitled to civil penalties of not more than $2,500 for each and every one of these violations pursuant to Cal. Civil Code § 1785.19. Plaintiff and the Damages Class are further entitled to actual damages and punitive damages of not less than $100 and not more than $5,000 for each violation. Plaintiff, the Damages Class, and the Injunctive Relief Two-Year Subclass, are entitled also to injunctive relief, and to recover their costs and attorneys' fees, pursuant to Cal. Civil Code § 1785.31.

**COUNT IV: Cal. Civil Code § 1785.31**
**Obtaining Consumer Report Under False Pretenses**
**(On Behalf of the Damages Class; and, for injunctive relief only, on Behalf of the Injunctive Relief Two-Year Subclass)**

115.     Defendant obtained Plaintiff's and the Damages Class and Subclass members' credit reports under false pretenses or knowingly without a permissible purpose in violation of Cal. Civil Code § 1785.31(a)(3).

116.     Defendant's numerous representations that borrowers would only undergo soft credit pulls in order to view their refinancing options were false. Defendant performed a hard credit pull before refinancing options could be viewed by borrowers.

117.     Defendant acted knowingly or recklessly. Defendant's willful conduct is reflected by, among other things:

(k)     This provision of the CCRAA was enacted in 1993; Defendant has had over 20 years to become compliant;

-21-

1        (l)     Defendant violated a clear statutory mandate set forth in Cal. Civil

2              Code § 1785.31;

3        (m)    Defendant knew the difference between a hard credit inquiry and a

4              soft credit inquiry;

5        (n)     Defendant knew that a hard credit inquiry reduces a consumer's

6              credit score;

7        (o)     Defendant falsely represented to borrowers that it would only do a

8              soft credit inquiry in order to induce borrowers to begin the

9              application process while still enabling Defendant to gain access to

10            information that would allow it to calibrate its rates based on

11            detailed information about the consumer's credit history;

12      (p)     Defendant falsely represented to borrowers that it would only do a

13            soft credit inquiry in order to reduce its own costs in connection

14            with procuring reports;

15      (q)     Consumer complaints to Defendant put Defendant on notice about

16            it lacked a permissible purpose to do a hard credit pull;

17      (r)     Despite the pellucid statutory text and there being a depth of

18            guidance, Defendant systematically procured consumer information

19            without a permissible purpose; and

20      (s)     By adopting such a policy, Defendant voluntarily ran a risk of

21            violating the law substantially greater than the risk associated with

22            a reading that was merely careless.

23    118.    For these violations, Plaintiff and the Damages Class members are entitled

24 to actual damages and punitive damages of not less than $100 and not more than $5,000

25 for each and every violation.  Plaintiff, the Damages Class, and the Injunctive Relief Two-

26 Year Subclass are further entitled to injunctive relief, and to recover their costs and

27 attorneys' fees, pursuant to Cal. Civil Code § 1785.31.

28

CLASS ACTION COMPLAINT

119.    Alternatively, Defendant negligently obtained Plaintiff's and the Damages Class members credit reports under false pretenses.  For these violations, Plaintiff and the Damages Class members actual damages, attorneys' fees, and costs.  Plaintiff, the Damages Class, and the Injunctive Relief Two-Year Subclass are further entitled to injunctive relief, and to recover their costs and attorneys' fees, pursuant to Cal. Civil Code § 1785.31

**COUNT V: Cal. Bus. & Prof. Code § 17200**
**Unlawful, Unfair, or Fraudulent Conduct**
**(On Behalf of the Injunctive Relief Class)**

120.    Defendant was required to adhere to the requirements of the UCL.

121.    By making hard pulls of Plaintiff and the Injunctive Relief Class's credit reports, Defendant diminished Plaintiff's and the Injunctive Relief Class members' credit scores.  *See King v. Bank of Am., N.A.*, No. C-12-04168 JCS, 2012 WL 4685993, at *8 (N.D. Cal. Oct. 1, 2012) ("Allegations of a diminished credit score have been found to satisfy the UCL's standing requirement.").

122.    Defendant's hard credit pulls constituted unlawful, unfair, and fraudulent business practices.

123.    Defendant's practices were unlawful because they violate the FCRA and/or the CCRAA.

124.    Defendant's practices were unfair because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to falsely represent that Defendant would only be performing a soft inquiry of Plaintiff's and the Injunctive Relief Class members' credit reports.

125.    Defendant's practices were fraudulent because Plaintiff and the Injunctive Relief Class were deceived and/or were likely to be deceived by Defendant's false representations that it would only do a soft inquiry into a potential borrower's credit.

126.    The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

127.    Plaintiff and members of the Injunctive Relief Class are entitled to injunctive relief and to the recovery of attorney's fees and costs .

## **PRAYER FOR RELIEF**

128.    WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a.    Determining that this action may proceed as a class action under Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure;

b.    Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the Classes;

c.    Issuing proper notice to the Classes at Defendant's expense;

d.    Declaring that Defendant violated the FCRA;

e.    Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.    Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

g.    Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h.    Declaring that Defendant violated the CCRAA;

i.    Awarding actual damages, punitive damages, civil penalties, costs, and attorney's fees as provided under the CCRAA;

j.    Declaring that Defendant's actions violated the UCL;

k.    Awarding attorney's fees and costs as provided under the UCL;

l.    Awarding appropriate injunctive relief under the UCL and CCRAA, including an injunction requiring that Defendant cease its unlawful practices and ensure that consumer reporting agencies remove Defendant's unauthorized credit inquiries from Plaintiff's and the Class members' credit reports;

m.    Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

-24-

## DEMAND FOR JURY TRIAL

129.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Classes demand a trial by jury.


Respectfully submitted,

Dated: November 24, 2014          NICHOLS KASTER, LLP

By: /s/Matthew C. Helland
        Matthew C. Helland

ATTORNEY FOR INDIVIDUAL AND
REPRESENTATIVE PLAINTIFF

CLASS ACTION COMPLAINT