UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN HEATON, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SOCIAL FINANCE, INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-05191-TEH<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendants' motion for summary judgment, filed on September 11, 2015. After carefully reviewing the parties' written arguments, the Court finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b), and now VACATES the October 19, 2015 hearing. Defendants' motion for summary judgment is DENIED for the reasons set forth below.

**BACKGROUND**

Defendant SoFi Lending is a wholly-owned subsidiary of Defendant SoFi. Mot. for Summary Judgment ("MSJ") at 2 (Docket No. 73). SoFi Lending operates the loan website www.SoFi.com. *Id.* Plaintiffs Shawn Heaton ("Heaton") and Anna Ahlborn ("Ahlborn") each visited Defendants' website and had slightly different experiences.

Both Plaintiffs registered for the website by visiting the registration page. Joint Statement of Undisputed Material Facts ("UMF") at 3-4 (Docket No. 75). The phrase "this inquiry will not affect your credit score" appeared on the registration page. Plaintiffs' Opposition to MSJ ("Opp'n") at 4 (Docket No. 80). After registration, Plaintiffs were confronted with the website's "consents" page, and given an option to click a hyperlink to

1   expand and view the "credit disclosure."  UMF at 29-30; Pls. Ex. 3 at 2 (Docket No. 81-3).

2   The credit disclosure, once expanded, contained the following language:

> "You are authorizing us today for purposes of this loan application, and in addition, so that we can determine your eligibility for a separate personal loan, and from time to time if and when we approve you for a loan, to carry out the following:
> -Investigate your credit worthiness, and to obtain credit information, including a consumer credit report, and other information about you from others, such as credit reporting agencies…"

Ou Decl. Ex. G at 2 (Docket No. 77-7).  When Heaton checked the box agreeing to the credit disclosure – which had a heading titled "Soft Credit Pull Authorization and Final Submit" – and clicked a button labeled "Submit," a soft inquiry[1] was performed on his credit in order to prequalify him for certain loan products.  MSJ at 4.  Ahlborn clicked a button labeled "Start Application" after having clicked "Continue" to navigate away from the consents page.  *Id.* at 5.  After she entered her total student loan amount and clicked "Start," a soft inquiry was performed on her credit.  *Id.*

After leaving the "consents" page, Heaton started an application for a "Student Loan Refi."  Opp'n at 5.  He decided not to select any of the products for which he was prequalified, he navigated back to the home page and began the same process for a personal loan.  *Id*.  The next choice Heaton encountered was to "Select an Amount" – text which appeared next to a display box in which the website had pre-filled the amount of $10,000 and displayed partial terms for different loan options.  Ou Decl. Ex. L (Docket No. 77-12).  Heaton clicked "Request Amount," and a hard inquiry was performed on his credit.  MSJ at 6-7.

After entering her total loan amount and having a soft inquiry performed on her credit, Ahlborn was also shown a screen with partial loan terms for different loan products.

---

[1] A "soft" inquiry does not appear on a consumer's credit report and does not affect his/her credit score.  Conversely, a "hard" inquiry does appear on a credit report, and may negatively affect a consumer's credit score, especially if many hard inquiries are performed within a short period of time.  Defendants differentiate between the two types of inquiries by using two different subscriber identification codes when ordering reports from credit reporting agency Experian.  MSJ at 6.

2

1 Opp'n at 6; Ou Decl. Ex. V (Docket No. 77-22). At the top of the screen was the
2 statement: "Choose your product now, or you can choose your product later." *Id.* As in
3 Heaton's case, the website had pre-selected one of the products for Ahlborn, and after she
4 clicked a button either stating "Choose Now" or "Choose Later," a hard inquiry was
5 performed on her credit. Opp'n at 7.

6 Plaintiff Heaton's credit score was 756 on July 5, 2014. Pls. Ex. 19 (Docket No.
7 81-19). Defendants performed the hard inquiry on his credit on July 9, 2014. On August
8 18, 2014, Heaton applied for a credit card with Credit One Bank, and was denied. Second
9 Amended Complaint ("SAC") ¶ 79 (Docket No. 65). One of the reasons for the denial was
10 that there were too many inquiries on his credit. *Id.* Plaintiff Ahlborn alleges that her
11 credit score also decreased due to the hard inquiry performed by Defendants. *Id.* ¶ 107.

12 Plaintiffs filed suit on November 24, 2014, claiming that Defendants mislead
13 consumers by assuring them that any inquiries performed by Defendants would be soft
14 credit pulls and not affect their credit, all while intending to perform hard pulls. Plaintiffs
15 contend that Defendants knew that the language on their website caused this confusion for
16 consumers – evidenced by numerous complaints on their social media accounts, through
17 the Better Business Bureau and directly to their customer service department – but chose
18 not to correct it for the sake of improving their numbers. Pls. Exs. 5-7, 12, 16.

19 Plaintiffs contend that Defendants violated the Fair Credit Reporting Act
20 ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, the California Consumer Credit Reporting Agencies
21 Act ("CCRAA"), Cal. Civ. Code §§ 1785.1 *et seq.*, and California's Unfair Competition
22 Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* Defendants moved for summary
23 judgment on June 18, 2015 (Docket No. 50), and then renewed the motion on September
24 11, 2015 (Docket No. 73) in response to Plaintiffs' Second Amended Complaint.

25
26 //
27 //
28 //

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the burden shifts to the opposing party, who must "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). If evidence produced by the parties is conflicting, the judge must assume the truth of the nonmoving party's evidence with respect to that fact. *Id.*

## DISCUSSION

### I. There Are Triable Issues of Material Fact as to Whether Defendants Violated the Applicable Statutes

The FCRA provides, in pertinent part: "A person shall not use or obtain a consumer report for any purpose unless … the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section…." 15 U.S.C. § 1681b(f). The statute enumerates several permissible purposes for which a consumer reporting agency may furnish a consumer report, including "to a person which it has reason to believe … intends to use the information in connection with a credit transaction involving the consumer…" 15 U.S.C. § 1681b(a)(3). The CCRAA has a similar provision, found in California Civil Code Section 1785.11.

### A. Whether There Was a Credit Transaction (Permissible Purpose)

Defendants first claim that they are not in violation of the FCRA because they had a permissible purpose for conducting the hard inquiries: namely, the "credit transaction" purpose. Defendants argue that both Plaintiffs initiated credit transactions by requesting loan amounts and loan products. However, the cases Defendants cite in support of this argument involve facts that evidence the plaintiffs' intent to have their credit pulled, either because the plaintiff specifically requested financing or completed a loan application. *See Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) (plaintiffs requested financing at a car dealership; issue was whether the credit transaction applied to the particular defendant lender); *Huertas v. Citigroup, Inc.*, No. 13-2050-RMB/JS, 2015 WL 2226012 at *1 (D.N.J. Aug. 21, 2014) ("[i]t is undisputed that Plaintiff applied for both credit cards"); *Baker v. Trans Union LLC*, No. 07-8032-PCT-JAT, 2008 WL 4838714 at * (D. Ariz. Nov. 19, 2009) ("[plaintiff] does not dispute that she applied for a mortgage").[2]

---

[2] Notably, these cases are not binding authority on this Court. Furthermore, the *Baker* case involved a motion to dismiss, not a summary judgment motion; thus, the requisite factual

1    Here, the facts are far from undisputed as to whether Plaintiffs' actions on
2    Defendants' website constituted a credit transaction, or whether such action simply
3    constituted "comparison shopping" behavior, which the Federal Trade Commission
4    ("FTC") has stated is not enough to rise to the level of a credit transaction under the
5    FCRA.  *See* Letter from David Medine to Karen Coffey (Feb. 11, 1998), 1998 WL
6    34323748 at *1 (FTC Staff Op. Ltr.) (credit transaction initiated by consumer only when
7    the consumer "clearly understands that he or she is initiating the purchase").  Therefore,
8    genuine issues of material fact exist as to whether a permissible purpose for conducting
9    hard inquiries on Plaintiffs' credit existed.

### B.  Whether Defendant SoFi Violated the Applicable Statutes

Defendants argue that Defendant SoFi (as opposed to Defendant SoFi Lending) did not violate the FCRA or CCRAA because Defendant SoFi did not procure any credit report.  This argument is unconvincing.  The FCRA provisions apply not only to the entities who specifically obtained the credit reports, but also "users" of such information.  *See, e.g.,* 15 U.S.C. §§ 1681b(f), 1681q.  Thus, even if SoFi did not personally request the hard inquiry, they could still be liable under the FCRA, especially given that SoFi Lending is a wholly-owned subsidiary of SoFi.  Furthermore, Plaintiffs point to sufficient factual disputes as to which Defendant initiated the request.  *See* Opp'n at 26.  For these reasons, Defendant SoFi has not met its burden of showing "an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

### C.  Plaintiffs' False Pretenses Claims under FCRA and CCRAA

Defendants contend that they cannot be liable for obtaining information under false pretenses when they had a statutory right to such information.  However, as discussed above, the issue of whether Defendants had a statutory right (i.e. whether they had a

---

showing is distinguishable.

6

1    permissible purpose for conducting the hard inquiries on Plaintiffs' credit) remains an
2    issue for the finder of fact.  Nevertheless, Defendants claim that summary judgment should
3    be granted on Plaintiffs' false pretenses claims for several other reasons.

      *1.  FCRA Section 1681q*

5      Defendants argue that Section 1681q (the FCRA's false pretenses statute) does not
6    apply to the instant facts.  Defendants contend that they could only be liable for false
7    pretenses based on the information communicated to Experian, the credit reporting agency,
8    and not statements they made directly to Plaintiffs, the consumers.  This argument is
9    unpersuasive for two reasons.  First, Defendants' reading of the statute does not take into
10   consideration the legislative purpose behind the FCRA.  The FCRA is a consumer
11   protection statute, which must be construed liberally.  *Guimond v. Trans Union Credit*
12   *Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  It would be contrary to the purpose of the
13   statute to arbitrarily limit protection only to certain situations of false pretenses.  Second,
14   there is no language in the statute that specifically forecloses reading Section 1681q to
15   include obtaining permission (or any other permissible purpose) from the consumer using
16   false pretenses, but making no false statements to the credit reporting agency.  The
17   language of the statute imposes criminal liability on "[a]ny person who knowingly and
18   willfully obtains information on a consumer from a consumer reporting agency under false
19   pretenses." 15 U.S.C. § 1681q.  This Court sees nothing in the plain language of the
20   statute that would limit liability to the factual scenarios suggested by Defendants,
21   especially when construing the FCRA liberally, as mandated by the Ninth Circuit.

      *2.  CCRAA Section 1785.31(a)(3)*

23     Defendants argue that there can be no violation of Section 1785.31(a)(3) of the
24   California Civil Code for two reasons: (1) the section is not a substantive section and thus
25   cannot be violated; and (2) the section only applies to "natural persons," and thus does not
26   apply to Defendants who are corporate entities.  This Court agrees that while Section
27   1785.31 is a remedial statute, the section does in fact create a private right of action under
28   California law.  *See Sanai v. Salz*, 170 Cal. App. 4th 746, 775 (2009).  However, this Court

finds Defendants' argument persuasive as a matter of law. Section 1785.31 as a whole is not limited to violations by "natural persons," but the language referring to false pretenses is only found in the subsection prescribing penalties for violations by "natural persons." Cal. Civ. Code § 1785.31(a)(3) ("In the case of liability of a natural person for obtaining a consumer credit report under false pretenses…"). Because the CCRAA does not have a counterpart to FCRA Section 1681q, and Plaintiffs cite no persuasive authority in opposition, this Court must read the plain language of the statute to mean that the California Legislature only intended natural persons to be liable for violations on the basis of false pretenses. Thus, Section 1785.31(a)(3) is an inappropriate vehicle for Plaintiffs' desired remedies.

## II. There Are Triable Issues of Material Fact as to Whether the Alleged Violations Were Willful

"The elements of an FCRA claim depend on the relief that a plaintiff seeks." *Syed v. M-I LLC*, No. CV-14-742, 2015 WL 4344746 at *2 (E.D. Cal. Aug. 28, 2014). If the plaintiff seeks actual damages, he or she only must allege that the defendant was negligent. 15 U.S.C. § 1681o(a). However, if the plaintiff seeks statutory and/or punitive damages under Section 1681n, he or she must show that the defendant "willfully fail[ed] to comply" with the statute. *Id.* at § 1681n(a).

In *Safeco Insurance Company of America v. Burr*, the United States Supreme Court held that the term "willful" as used in the FCRA required a showing of conduct by a defendant that was either willful or reckless. 551 U.S. 47, 57 (2007). According to the *Safeco* Court, recklessness meant taking an "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68. Applying this definition of recklessness, the *Safeco* Court went on to hold that merely showing that a defendant's understanding or interpretation of the FCRA's statutory requirements was erroneous is not enough to establish willfulness; rather, a plaintiff must alleged that the

8

defendant's reading of the statute was "objectively unreasonable." *Id.* at 69; *see also Syed*, 2014 WL 4344746, at *1-2.

Defendants argue that, according to *Safeco*, the analysis for whether a defendant's reading of the FCRA was objectively unreasonable mirrors a qualified immunity analysis: Plaintiffs must show that at the time of Defendants' actions, there was "clearly established" law – provided by a Court of Appeals or an official opinion from the FTC – specifically stating that the interpretation used by Defendants was incorrect. Defendants contend that if a statute is unclear and there is no precedential guidance as to what a valid interpretation may be, a violation may not be considered willful. However, this reading overstates *Safeco*'s holding. *Holman v. Experian Info. Solutions, Inc.*, No. 11-0180-CW, 2013 WL 4873496, at *6 (N.D. Cal. Sept. 12, 2013) ("[T]he *Safeco* Court only mentions qualified immunity once, in a parenthetical to a citation introduced by 'Cf.'"). The *Safeco* Court considered not only the "dearth of guidance and the less-than-pellucid statutory text" to decide whether the defendant's reading of the statute was reckless, but also considered other factors, such as whether the defendant's reading had "a foundation in the statutory text," and whether the defendant provided "a sufficiently convincing justification" for adopting its interpretation.[3] *Safeco*, 551 U.S. at 69-70.

Here, triable issues remain as to whether Defendants' belief that a permissible purpose existed for initiating the hard inquiries was not "objectively unreasonable." Plaintiffs assert – and this Court agrees – that the issue of whether Defendants' interpretation was objectively reasonable is not appropriate for a summary judgment motion. *See Manuel v. Wells Fargo Bank*, No. 14-CV-238, 2015 WL 4994538, at *18 (E.D. Va. Aug. 19, 2015) (denying summary judgment; holding that willfulness is a question of fact for the jury).

---

[3] Here, although Defendants point to the purported "objectively reasonable" interpretation (that Plaintiffs' activities on the website, Defendants fail to show that such an interpretation was their actual reading of the statute. *See Haley v. TalentWise, Inc.*, No. 13-1915-MJP, 2014 WL 1648480, at *2 (W.D. Wash. Apr. 23, 2014); *Singleton v. Domino's Pizza, LLC*, No. 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012); *Claffey v. River Oaks Hyundai, Inc.*, 494 F. Supp. 2d 976, 978-79 (N.D. Ill. 2007).

### III. Defendants Failed to Meet Their Burden as to Plaintiffs' UCL Claims

California's Unfair Competition Law prohibits "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendants argue that summary judgment is warranted on Plaintiffs' UCL claims because (1) Plaintiffs do not have standing; (2) Defendants did not make "unfair" or "fraudulent" statements; and (3) Defendants did not engage in "unlawful" conduct.

Defendants contend that Plaintiffs failed to establish private plaintiff standing. Standing under California's UCL is "substantially narrower" than Article III standing, as the plaintiff must demonstrate a loss of money or property. *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885-86 (Cal. 2011). Defendants contend that Plaintiffs' allegations of lower credit scores did not result in any monetary impact, and that because a drop in credit score alone does not establish standing, summary judgment is warranted. It is true that hypothetical and non-particularized injury is insufficient for UCL standing, and that in some cases, a drop in credit score is too hypothetical. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009). However, the majority of courts[4] in this Circuit have found that in some cases a decreased credit score can be sufficient for UCL standing, and the Ninth Circuit has cited this with approval. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). Furthermore, Heaton's credit card application with Credit One Bank was denied due to too many inquiries, which was a direct result of the hard pull on his credit. Thus, Plaintiffs have demonstrated sufficient injury under California's UCL.

Defendants also contend that Defendants made no "unfair or fraudulent" representations, and did not violated the FCRA or CCRAA to satisfy the unfair competition law's "unlawful" prong. However, these are issues of fact that are clearly in dispute. Plaintiffs offer evidence that the credit disclosure was titled in a misleading way

---

[4] *E.g. White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006); *Venugopal v. Digital Fed. Credit Union*, No. 12-6067-ED, 2013 WL 1283436, at *5 (N.D. Cal. Mar. 27, 2013); *Aho v. AmeriCredit Fin. Servs., Inc.*, No. 10-CV-1373, 2011 WL 2292810, at *2 (S.D. Cal. June 9, 2011).

and that a reasonable consumer would believe that Defendants would not make any hard inquiries.  Furthermore, Plaintiffs offer evidence that Defendants knew the practice was misleading and purposefully failed to correct the website.  Viewing the evidence in the light most favorable to the non-moving party, triable issues remain as to Plaintiffs' UCL claims.  Thus, summary judgment is inappropriate.

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is hereby DENIED.  The parties shall appear for a case management conference on **Monday, November 2, 2015, at 1:30pm**.  The parties shall file a joint case management statement on or before **October 26, 2015**.

**IT IS SO ORDERED.**

Dated:   10/15/2015                                      _____
                                                                            THELTON E. HENDERSON
                                                                            United States District Judge