NICHOLS KASTER, LLP
Matthew C. Helland, SBN 250451
helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA 94111
Tel.: 415.277.7235; Fax: 415.277.7238

BERGER & MONTAGUE, P.C.
E. Michelle Drake, MN Bar No. 0387366*
emdrake@bm.net
John G. Albanese, MN Bar No. 0395882*
jalbanese@bm.net
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999; Fax: 612.584.4470

GOTTLIEB & ASSOCIATES
Jeffrey M. Gottlieb, NY Bar No. JG-7905*
nyjg@aol.com
Dana L. Gottlieb, NY Bar No. DG-6151*
danalgottlieb@aol.com
150 East 18th Street, Suite PHR
New York, NY 10003
Tel.: 212.228.9795; Fax: 212.982.6284

*admitted *pro hac vice*
Attorneys for Individual and Representative Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN HEATON, and ANNA AHLBORN, individually and as representatives of the classes,<br><br>        Plaintiffs,<br><br>v.<br><br>SOCIAL FINANCE, INC., and SOFI LENDING CORP.,<br><br>        Defendants. | Case No.:3:14-cv-05191-TEH<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENTS AND MEMORANDUM IN SUPPORT [UNOPPOSED]**<br><br>Date: August 8, 2016<br>Time: 10:00 AM<br>Location: Courtroom 2, 17th Floor<br>Judge: Hon. Thelton E. Henderson |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 8, 2016, at 10:00 AM, in Courtroom 2 on the 17th Floor, at 450 Golden Gate Avenue, San Francisco, California, the Honorable Thelton E. Henderson presiding, Plaintiffs Shawn Heaton and Anna Ahlborn and Class Counsel will respectfully move the Court to award 25% of the Settlement Fund ($625,000) in attorneys' fees, $48,035.95 to reimburse Counsel for out-of-pocket, documented expenses, $7,000 as a service payment to Plaintiff Heaton, and $3,000 as a service payment to Plaintiff Ahlborn.

Defendants Social Finance, Inc. and SoFi Lending Corp. do not oppose this Motion.

## MEMORANDUM OF POINTS & AUTHORITIES

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF THE ISSUE TO BE DECIDED .................................... 1

III.   BACKGROUND ........................................................................................... 1

     A.    THE PARTIES ENGAGED IN LITIGATION, INFORMAL DISCOVERY, AND MEDIATION BEFORE REACHING THE SETTLEMENT ............................... 1

         1.    Litigation History .................................................................... 1

         2.    Summary of Plaintiffs' Settled Claims Against Defendants ........... 3

     B.    THE PARTIES' SETTLEMENT AGREEMENT ......................................... 4

         1.    Overview of Terms and Settlement Administrations .................. 4

         2.    Reaction of Settlement Class Members to the Settlement ............ 5

         3.    Class Counsel's Fees and Costs to Date ................................. 5

IV.   ARGUMENT ............................................................................................... 6

     A.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS ................................................................................................. 6

         1.    The Percentage of the Settlement Fund Requested (25%) Is Reasonable ............................................................................. 7

            a.   The Monetary and Non-Monetary Results Obtained are Significant .............................................................. 8

            b.   Effort Expended by Counsel ................................... 9

            c.   Counsel's Experience and Skill ............................ 10

            d.   Class Counsel Assumed Significant Risks in this Complex Litigation ........................................... 10

            e.   The Reaction of the Class to Date is Positive ........ 12

            f.   Comparison with Class Counsel's Lodestar ........... 13

         2.    Class Counsel's Litigation Costs Are Recoverable ............... 14

        B.      THE REQUESTED SERVICE PAYMENTS ARE APPROPRIATE ........................... 15

V.      CONCLUSION ............................................................................................................ 16

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ........................................7

*Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713 (N.D. Cal. March 7, 2011) ...............14

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ......................12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................7, 13

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................................13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ..................................................................6

*Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109 (N.D. Cal. May 23, 2016) ...................................................................................................................................13

*Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ...13

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) ...................................11

*Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ...9

*Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004) ...........................................11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................6

*Harkins v. Diversified Collection Servs., Inc.*, No. 12-cv-1229, 2012 WL 5928997 (D. Md. Nov. 26, 2012) ......................................................................................................................4

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ..........................................................14, 15

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) ..................................................16

*Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) ....................................................6

*Heaton v. Soc. Fin., Inc.*, No. 14-cv-05191, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) ...9

*In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................14

*Klee v. Nissan N. Am., Inc.*, No.12-cv-08238, 2015 WL 4538426 (C.D. Cal. July 7, 2015) ..................................................................................................................13

*Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................................................................................................................7

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014) ...............................6

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ...............................13

*In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ....................................................................................................13

*McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976 (N.D. Cal. 2009) ...............14

*McKenzie v. Federal Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) .................................................................................................................14

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) .........................1

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ...................................................6

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ............................................5

*In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801 (N.D. Cal. March 18, 2013) ...............................................................................................................16

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .......................................7

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ...............13

*Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134 (1968) .............................6

*Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ......................................................6

*Ralston v. Mortg. Investors Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240 (N.D. Cal. Sept. 19, 2013) ...........................................................................................................16

*Razilov v. Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ....................................................................................................12, 16

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .....................................................6

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ....................................13

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................15

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ...............7

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................6, 15

*Steiner v. American Broad. Co., Inc.*, 248 Fed. Appx. 780 (9th Cir. 2007) .....................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ......................................................................................................7

-iv-

*Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385 (N.D. Cal.
April 21, 2011) ..................................................................................................12, 15

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460
F.3d 1253 (9th Cir. 2006) ...................................................................................14

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..................14

*Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL 3929129 (N.D.
Cal. July 18, 2013) ..............................................................................................16

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..................................7, 8, 13, 14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ..........6, 7, 11

Rules & Statutes

15 U.S.C. § 1681, *et seq.* .................................................................................*passim*

Cal. Civil Code § 1785.19 ...................................................................................11

Fed. R. Civ. P. 23 ...............................................................................................1

1   **I.      INTRODUCTION**

2          Pursuant to Fed. R. Civ. P. 23(h), and in accordance with the Court's Preliminary

3   Approval Order (ECF No. 114), Plaintiffs Shawn Heaton and Anna Ahlborn ("Plaintiffs")

4   and Class Counsel seek approval of an award of 25% of the Settlement Fund in attorneys'

5   fees ($625,000), $48,035.95 to reimburse Counsel for out-of-pocket, documented

6   expenses, $7,000 as a service payment to Plaintiff Heaton, and $3,000 as a service

7   payment to Plaintiff Ahlborn.

8          The requested fees, expenses, and service payments are authorized by the

9   Settlement Agreement (ECF No. 113-1) and reasonable for the reasons set forth below.

10  Defendants Social Finance, Inc. and SoFi Lending Corp. ("Defendants") do not oppose

11  this Motion, nor has any Settlement Class member objected to the proposed awards or any

12  other aspect of the settlement to date.[1]

13  **II.     STATEMENT OF THE ISSUE TO BE DECIDED**

14         Whether the requested attorneys' fees, expenses, and service payments are

15  reasonable and should be awarded.

16  **III.    BACKGROUND**

17          A.      **THE PARTIES ENGAGED IN LITIGATION, INFORMAL DISCOVERY, AND
                    MEDIATION BEFORE REACHING THE SETTLEMENT**

18

19                 1.      **Litigation History**

20         Prior to reaching the Settlement Agreement in this matter, this case was actively

21  litigated.  On November 24, 2014, Plaintiff Heaton filed a Class Action Complaint against

22  Defendant Social Finance, Inc.  (ECF No. 1.)  On behalf of himself and the proposed

23  classes, Plaintiff Heaton sought statutory damages, plus attorneys' fees, costs, injunctive

24  ───────────────
    [1] In accordance with the Preliminary Approval Order, Plaintiffs are filing this Motion in
25  advance of the deadline for objections so that Settlement Class members will have an
    opportunity to review the Motion, if they wish to do so, before deciding whether to file an
26  objection.  *See In re Mecury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir.
    2010) (stating that such motions should be filed before the deadline to object has passed).
27  If any objections are ultimately filed, they will be addressed in connection with the
    forthcoming motion for final settlement approval.

28
─────────────────────────────────────────────
MOTION FOR ATTORNEYS' FEES, COSTS & SERVICE PAYMENTS
Case No. 3:14-cv-05191-TEH

1   relief, and all other available relief.  (*Id.*)  Defendant Social Finance, Inc. answered on

2   January 15, 2015.  (ECF No. 23.)  Plaintiff Heaton amended the operative complaint on

3   June 12, 2015 (ECF No. 46) and on July 14, 2015 (ECF No. 65), adding Plaintiff Ahlborn

4   and Defendant SoFi Lending Corp., and refining class definitions and allegations.  (*Id.*)

5   Both Defendants answered the Second Amended Complaint on August 4, 2015.  (ECF

6   Nos. 68, 69.)

7            The parties engaged in substantial discovery in connection with this matter.

8   Plaintiffs responded to two sets of interrogatories and requests for production and one set

9   of requests for admission, Defendants responded to two sets of requests for production,

10   one set of interrogatories and requests for admission, and one set of special interrogatories

11   related to Defendants' databases.  (Declaration of E. Michelle Drake ("Drake Decl.") ¶ 3.)

12   Further, Defendants produced thousands of pages of documents, which Plaintiffs

13   processed and reviewed.  (*Id.* ¶ 4.)  Plaintiffs took four 30(b)(6) depositions of

14   Defendants, deposing Social Finance's vice president of capital markets, as well as

15   Defendants' vice president of operations, vice president of engineering, and chief

16   marketing officer.  Defendants deposed Plaintiff Heaton, as well as third parties Experian

17   Information Solutions and Credit One Bank.  (*Id.* ¶ 5.)  Also, the parties both engaged in

18   substantial third party discovery, with Defendants subpoenaing Experian, Credit One,

19   Trans Union, and Equifax, and Plaintiffs subpoenaing Experian, the Better Business

20   Bureau, and the Golden Gate Better Business Bureau.  (*Id.* ¶ 6.)  Plaintiffs also retained

21   two experts in this matter to assist in interpreting Defendants' documents and data.  (*Id.* ¶

22   7.)   Throughout discovery, the parties engaged in numerous meet and confers via

23   correspondence and telephone calls.  (*Id.* ¶ 8.)

24            On September 11, 2015, Defendants moved for summary judgment.  (ECF No.

25   73.)  On October 15, 2015, following full briefing and oral argument, the Court denied

26   Defendants' motion.  (ECF No. 90.)  Defendants moved for reconsideration (ECF No. 92),

27   which the Court also denied (ECF No. 94) and filed an amended order clarifying further

28

-2-

the Court's denial of summary judgment (ECF No. 94-1).  Defendants moved to amend the order to allow for interlocutory appeal (ECF No. 96), which the Court denied (ECF No. 107).

On January 26, 2016, the parties engaged in an all-day mediation with the Honorable Edward Infante.  After a full day of vigorous, arms-length negotiations, the parties reached an agreement as to the material terms of a settlement.  (ECF No. 109.)  While the parties negotiated the case, the parties did not negotiate any terms relating to attorneys' fees for Class Counsel or service awards for the Named Plaintiffs until after all other material terms were agreed upon.  (Drake Decl. ¶ 10.)  The material terms of the settlement were reduced to a terms sheet signed at the conclusion of mediation.  (*Id.* ¶ 9.)  In negotiations over subsequent weeks, the parties then formalized a class-wide settlement, which the Court preliminarily approved on April 20, 2016.  (ECF No. 114.)

### 2. Summary of Plaintiffs' Settled Claims Against Defendants

Plaintiffs alleged that Defendants violated the Fair Credit Reporting Act ("FCRA"), the California Consumer Credit Reporting Agencies Act ("CCRAA"), and California's Unfair Competition law ("UCL") by representing that they would only make "soft" credit pulls which do not affect a consumer's credit score, but instead performed hard credit inquiries, which do affect credit scores, before the borrower had applied for a loan product.  Plaintiffs alleged that Defendants did not have a permissible purpose to make the hard credit inquiries at the time that Defendants made the inquiries and that Defendants obtained consumers' credit reports under false pretenses.  Defendants deny the allegations and all liability with respect to all facts and claims alleged by Plaintiffs, and specifically aver that they had a permissible purpose to obtain the Plaintiffs' credit reports when they did, but to avoid the further costs and burdens of litigation, the parties agreed to settle the action.  (ECF No. 113-1.)  The Settlement Class consists of the over 10,700 consumers on whom SoFi made a hard credit inquiry between November 20, 2013 and August 13, 2014 inclusive in connection with a student loan refinancing or personal loan,

1   who neither (a) funded a loan, nor (b) uploaded all documents requested on the

2   www.sofi.com website.  (*Id.* ¶ 3.1.)  In return for the settlement benefits, the Settlement

3   Class members will release all claims that were raised, or could have been raised, based

4   on the facts alleged in the action.  (*Id.* ¶ 5.1.)

5      **B.   THE PARTIES' SETTLEMENT AGREEMENT**

6         **1.   Overview of Terms and Settlement Administration**

7         First, in connection with the settlement of the litigation, Defendants have already

8   requested that Experian Information Solutions, Inc. ("Experian") change hard credit

9   inquiries to soft credit inquiries for those inquiries made by SoFi Lending Corp. in

10  connection with student loan refinance and personal loan applications between November

11  20, 2013 and December 29, 2014 with respect to website users who did not upload all

12  documents or have a loan funded.  (ECF No. 113-1 ¶ 8.1.)  Experian has already complied

13  with this request and recharacterized the inquiries as soft inquiries.  (Declaration of James

14  F. McCabe ("McCabe Decl.") ¶ 6.)  This relief is important and valuable as each hard

15  inquiry can result in a reduction in credit score by five points.  *See Harkins v. Diversified*

16  *Collection Servs., Inc.*, No. 12-cv-1229, 2012 WL 5928997, at *1 n.1 (D. Md. Nov. 26,

17  2012) (citing Lynnley Browning, *Preventing Credit Score Dings*, N.Y. Times, Oct. 10,

18  2010, at RE11, *available at* http:// www.nytimes.com/2010/10/10/realestate/10mort.html).

19  It is unusual for a defendant to provide prospective relief before a class action settlement

20  has achieved final approval.  However, given the time-sensitive nature of the relief

21  afforded to class members, Class Counsel bargained to get the necessary relief in place as

22  soon as practicable.

23        Second, Defendants will create a common fund for class members consisting of

24  two and a half million dollars ($2,500,000) for the benefit of the Settlement Class.  (ECF

25  No. 113-1 ¶ 6.3.)  This fund will be distributed *pro rata* to all Settlement Class members

26  who do not opt-out of the settlement, after the deductions for any Court-awarded

27  attorneys' fees and costs, settlement administration costs, and Named Plaintiff service

28

-4-

awards.  (*Id.* ¶ 7.1.)  No portion of the Settlement Fund will revert to Defendants in any circumstance.  If any settlement checks are not cashed, funds associated with those uncashed checks will be donated to the National Association of Consumer Advocates ("NACA") 501(c)(3) fund.  (*Id.* ¶ 7.3.)  The NACA 501(c)(3) fund provides educational materials to consumers regarding the FCRA and credit reporting (ECF No. 113-13), and is an appropriate cy pres recipient.  *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("*[C]y pres* distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members.").

**2.      Reaction of Settlement Class Members to the Settlement**

On May 5, 2016, Dahl Administration mailed Notice to the 10,795 Settlement Class members in accordance with the procedures outlined in the Settlement Agreement. On May 20, 2016, Dahl Administration sent the 10,794 Settlement Class members with email addresses in Defendants' records, the Email Notice of Settlement.  On May 5, 2016, Dahl Administration also activated the Settlement Website, www.sofiFCRAsettlement.com, and a toll-fee telephone line for class members to utilize. As of June 23, 2016, there have been zero opt-outs or objections received.  The postmark deadline for opt-outs is July 4, 2016, and the deadline for objections is July 14, 2016.

**3.      Class Counsel's Fees and Costs to Date**

To date, Berger & Montague, P.C. has incurred $5,265.90 in costs and $80,426.23 in fees, Nichols Kaster, PLLP has incurred $42,169.57 in costs and $320,526.81 in fees, and Gottlieb & Associates has incurred $725.00 in costs and $15,750.00 in fees.  (Drake Decl. ¶¶ 12-14.)

The requested awards are 25% of the Settlement Fund as attorneys' fees ($625,000), and reimbursement of total out-of-pocket expenses in the amount of $48,035.95.  The requested fees award results in just under a 1.5 multiplier of Class Counsel's cumulative lodestar, which, as outlined below, weighs in favor of the requested amount.

1    **IV.    ARGUMENT**

2        **A.    THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND**
3               **COSTS**

4        It is well-settled that "a lawyer who recovers a common fund for the benefit of

5    persons other than himself or his client is entitled to a reasonable attorney's fee from the

6    fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v.*

7    *Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970). "[T]hose who benefit from the creation of

8    the fund should share the wealth with the lawyers whose skill and effort helped create it."

9    *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This

10   principle is particularly important in complex litigation, where private enforcement is a

11   necessary component of legal compliance. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S.

12   248, 262-3 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v.*

13   *Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. In'l Parts*

14   *Corp.*, 392 U.S. 134, 139 (1968). Fee awards in successful cases, such as this one,

15   encourage class actions, and thereby promote private enforcement and compliance with

16   federal consumer protection laws, such as the FCRA.

17       Courts have encouraged litigants to resolve fee issues by agreement. *See Hanlon*

18   *v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Federal Rule of Civil Procedure

19   23(h) expressly states that "the court may award reasonable attorney's fees and nontaxable

20   costs that are authorized by law or by the parties' agreement." Further, the Ninth Circuit

21   has held that "the court need not inquire into the reasonableness of the fees even at the

22   high end with precisely the same level of scrutiny as when the fee amount is litigated."

23   *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003). This Circuit recognizes that "the

24   parties are compromising precisely to avoid litigation." *Laguna v. Coverall North*

25   *America, Inc.*, 753 F.3d 918, 922 (9th Cir. 2014), *vacated on other grounds*, 772 F.3d 608

26   (9th Cir. 2014).

27       Here, the parties' Settlement Agreement, which was negotiated under adversarial

28

-6-

and non-collusive circumstances, provides for a reasonable award of attorneys' fees of up to 25% of the Settlement Fund and reimbursement of out-of-pocket costs, and those fees and costs should be approved.

**1.  The Percentage of the Settlement Fund Requested (25%) Is Reasonable.**

The Ninth Circuit has approved two methods of assigning attorneys' fees in common fund cases: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re. Wash. Pub. Power Supply*, 19 F.3d at 1295-96). Under the percentage method, the court may award class counsel a percentage of the common fund recovered for the class. *Id.* The percentage method is particularly appropriate in common fund cases, because "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The Ninth Circuit's approved "benchmark" percentage is exactly what Class Counsel is requesting here – 25%. *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Courts in this Circuit often award even more than the benchmark percentage, which weighs in favor of Class Counsel's request here. *See Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) ("in most common fund cases, the award exceeds [the] benchmark"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%"); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) (30%).

When analyzing a fee request under the percentage method, courts in this Circuit look at: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; (8) non-monetary benefits; and

1   (9) comparison with counsel's lodestar.  *See Vizcaino*, 290 F.3d at 1048-50.  Applied here,

2   all of these factors support Class Counsel's request for 25% of the Settlement Fund.

3                  a.   The Monetary and Non-Monetary Results Obtained Are Significant

4          Plaintiffs and Class Counsel achived a significant result in this matter, especially

5   in light of the relatively small individual amounts at issues (the FCRA provides for

6   statutory damages of $100 - $1,000).   The monetary relief achieved for the Settlement

7   Class will result in an automatic payment of approximately $164 per class member.  This

8   amount compares favorably to the relief achieved in similar settlements, many of which

9   have settled for only non-monetary relief such as credit monitoring services, and have

10  required a claim form.  This settlement is stronger than comparable settlements because it:

11  1) does not require class members to submit a claim form; 2) provides for substantially

12  greater monetary relief than settlements of similar claims; and 3) has already provided

13  prospective relief to class members.  By any measure, this settlement is best-in-class.  *See,*

14  *e.g., Barel v. Bank of Am.*, No. 06-cv-2372, ECF No. 60, Final Approval Order (E.D. Pa.

15  Jan. 16, 2009) (granting final approval to claims-made settlement for 27,350 class

16  members where class members who file a claim form receive four months of credit

17  monitoring services); *Barton v. Specialized Loan Servicing, LLC*, No. 13-cv-2366, ECF

18  No. 52, Stipulation of Settlement (D. Minn. Nov. 17, 2014) (settling for $14.28 per

19  impermissible credit report pull); *Holman v. Experian Info. Solutions*, No. 11-cv-180,

20  ECF 243-1, Settlement Agreement (N.D. Cal. Mar. 27, 2014) (settling for class members

21  to receive $375 on claims-made basis, less than 10% of class members ultimately made

22  claims); *King v. United SA Fed. Credit Union*, No. 09-cv-937, ECF No. 31, Final

23  Approval Order (W.D. Tex. Oct. 8, 2010) (awarding class members $100 and a free credit

24  score on a claims-made basis); *Parthiban v. GMAC*, No. 05-cv-768, ECF No. 103-2,

25  Settlement Agreement (C.D. Cal. Jan. 10, 2008) (providing settlement class members with

26  12 months credit monitoring on a claims made basis); *Phillips v. Accredited Home*

27  *Lenders Holding Co.*, No. 06-cv-57, ECF No. 51, Final Approval Order (C.D. Cal. July

28

17, 2008) (awarding $10 per class member on a claims-made basis); *Sleezer v. Chase Bank USA, N.A.*, No. 07-cv-961, ECF No. 53-1, Settlement Agreement (W.D. Tex. Jan. 12, 2009) (providing identity protection services worth $71.94 per class member on a claim-made basis); *Yeagley v. Wells Fargo*, No. 05-cv-3403, ECF No. 142, Final Approval Order (N.D. Cal. July 23, 2007) (approving settlement that provided for two credit reports and a $50 rebate on first mortgage loan from defendant).

The non-monetary relief here, changing hard pulls to soft pulls, represents a substantial accomplishment.  Not only will Settlement Class members receive monetary compensation for their injuries, they have already received complete prospective relief in the form of having hard pulls recategorized as soft pulls, thereby eliminating the impact of Defendants' conduct on their credit scores.  Given that there is a disagreement about whether injunctive relief is even available to private plaintiffs under the FCRA, this accomplishment is remarkable, and may achieve more for class members than could have ever been achieved in litigation.  *See Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA.").  Further, as briefed extensively in this case, there was a substantial dispute among the parties regarding whether Plaintiffs had standing to bring a UCL claim for injunctive relief based on a diminished credit score.  *See Heaton v. Soc. Fin., Inc.*, No. 14-cv-05191, 2016 WL 232433, at *7 (N.D. Cal. Jan. 20, 2016) ("[T]here is a split among courts as to whether a mere drop in credit score is sufficient to establish standing under the UCL.").

Accordingly, these factors weigh heavily in favor of granting the requested fee award.

b.  Effort Expended by Counsel

This action was aggressively litigated by both sides before the parties settled.  As described above in the Background section, the parties engaged in extensive discovery, depositions, and summary judgment motion practice.  The extent of the litigation is

-9-

reflected in Class Counsel's fee records, attached to the Drake Declaration as Exhibits A -
C and redacted only for privilege.  Given the significant time devoted to litigating and
settling this action, this factor weighs in favor of the requested award.

c.  Counsel's Experience and Skill

Class Counsel are highly experienced in complex class action litigation and
consumer litigation in general.  (*See* ECF Nos. 113-2 – 113-4.)  Berger & Montague, P.C.
was founded in 1970, and has been concentrated on representing plaintiffs in complex
class actions ever since.  (ECF No. 113-2.)  The firm has been recognized by courts for its
skill and experience in handling major complex litigation.  (*Id.*)  Berger has been
recognized by The National Law Journal in 11 of the last 15 years for its "Hot List" of top
plaintiffs' oriented litigation firms in the nation.  (*Id.*)  Lead counsel from Berger, E.
Michelle Drake, has worked extensively on FCRA class actions, and John G. Albanese,
also from Berger, has concentrated his practice on FCRA litigation as well, and both are
counsel of record in many active FCRA cases throughout the country.  (*Id.*)  Nichols
Kaster, LLP and Gottlieb & Associates are similarly dedicated to representing consumers
in class actions and have extensive FCRA experience.  (ECF Nos. 113-3, 113-4.)

Class Counsel's substantial litigation skills were necessary to bring this action to a
successful conclusion.  Counsel thoroughly investigated Plaintiffs' claims, analyzed
documents and used them to Plaintiffs' advantage at depositions, successfully opposed
Defendants' motion for summary judgment, and ultimately settled this matter on terms
that are highly favorable to the Settlement Class.

d.  Class Counsel Assumed Significant Risks in this Complex
Litigation

The requested fee award is even more reasonable considering the complexity of
the litigation, and the risks that Class Counsel assumed in undertaking the representation
on a contingent fee basis.  Class action litigation is inherently complicated and time-
consuming.  On top of the demands that come with this type of litigation, Class Counsel

-10-

1    also had to be prepared to make this investment with the very real possibility of an

2    unsuccessful outcome and no fee recovery of any kind.  The Ninth Circuit has recognized

3    the importance of rewarding attorneys who take cases on a contingency basis.  *In re Wash.*

4    *Pub. Power Supply*, 19 F.3d at 1299 ("[c]ontingent fees that may far exceed the market

5    value of the services if rendered on a non-contingent basis are accepted in the legal

6    profession as a legitimate way of assuring competent representation for plaintiffs who

7    could not afford to pay on an hourly basis regardless whether they win or lose."); *see also*

8    *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 157(Cal. 2004) ("[a] contingent fee

9    must be higher than a fee for the same legal services paid as they are performed.  The

10   contingent fee compensates the lawyer not only for the legal services he renders but for

11   the loan of those services.") (internal citations omitted).

12           The claims and factual scenarios brought in this case were novel and there was no

13   case law directly on point that would establish Defendants' liability.  The FCRA is not a

14   strict liability statute.  *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir.

15   2001).  A FCRA plaintiff can recover only where the defendant has acted negligently or

16   willfully, and where the defendant's violation was at most negligent, recovery is limited to

17   actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1).  Because they do not allege

18   any actual damages, in order to recover anything, Plaintiffs would have had to prove not

19   only that Defendants violated the FCRA, but that they did so willfully.  Likewise, for

20   Plaintiffs' claim for civil penalties under the CCRAA, Plaintiffs would have to show

21   Defendants acted not only negligently but knowingly and willfully.[2]  Cal. Civil Code §

22   1785.19.  Throughout this litigation and in their summary judgment motion, Defendants

23   have vigorously contested that they willfully violated either the FCRA or the CCRAA,

24   arguing that there was a lack of established law to have sufficiently put the Defendants on

25   notice that they were potentially violating the FCRA or the CCRAA.  While this Court

26

27   _____

     [2]  The "knowingly and willfully" standard applies for Plaintiffs' claims under 15 U.S.C. §
28   1681q.

-11-

1    denied Defendants' motion for summary judgment because Defendants had not put

2    forward evidence of their pre-litigation interpretation of the statutes, this Court has

3    recognized there is a split of authority on the issue of whether such an interpretation is

4    required.  Moreover, Defendants have indicated that if this litigation were to continue,

5    they would waive attorney-client privilege and present an advice-of-counsel defense to

6    willfulness.  Plaintiffs believe that these arguments could have been overcome in

7    litigation, but also believe they demonstrate that there were serious obstacles to recovery

8    in this case.  Moreover, the settlement in this case was negotiated in the shadow of the

9    Supreme Court's grants of certiorari in *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. April

10   27, 2015) and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (U.S. June 8, 2015).  A

11   defendant-friendly result in either *Spokeo* or *Tyson* could have significantly impacted this

12   lawsuit, and may have presented substantial, if not insurmountable, hurdles to any

13   monetary recovery.

14        Thus, the complexity and risks involved in this matter weigh in favor of Class

15   Counsel's requested fees.

16                    e.   The Reaction of the Class to Date is Positive

17        Notice of the settlement, including the proposed amounts to be requested in fees,

18   costs, and service payments, was mailed on May 5, 2016 to over 10,700 individuals and

19   was emailed to the same on May 20, 2016.  Not a single class member has filed an

20   objection to the requested fee award to date, and none have opted-out.  (Drake Decl. ¶ 15.)

21   This factor supports the requested award.  *Barbosa v. Cargill Meat Solutions Corp.*, 297

22   F.R.D. 431, 448 (E.D. Cal. 2013) (finding only one opt-out and zero objections from

23   1,837 class members favored awarding 33% of the common fund); *Razilov v. Nationwide

24   Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (finding

25   27 opt-outs out of 60,000 class members weighed in favor of granting fee award in excess

26   of 25% benchmark); *Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385, at *6

27   (N.D. Cal. April 21, 2011) ("[t]he fact that no members of the 390-person class objected

28

-12-

MOTION FOR ATTORNEYS' FEES, COSTS & SERVICE PAYMENTS
Case No. 3:14-cv-05191-TEH

1   to the proposed 33% fee award – which was also communication in the notice – supports

2   an increase in the benchmark rate.").

3              f.   Comparison with Class Counsel's Lodestar

4       A comparison with Class Counsel's lodestar further demonstrates that the

5   requested fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can

6   be helpful in suggesting a higher percentage when litigation has been protracted").  The

7   "cross-check calculation need entail neither mathematical precision nor bean counting . . .

8   [courts] may rely on summaries submitted by the attorneys and need not review actual

9   billing records."  *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516, at *21-22

10  (N.D. Cal. Mar. 6, 2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-7 (3d

11  Cir. 2005)).

12      The lodestar method is calculated by multiplying "the number of hours . . .

13  reasonably expended on the litigation . . . by a reasonable hourly rate."  *In re Bluetooth

14  Headset*, 654 F.3d at 941.  In considering rates, courts examine the rate "prevailing in the

15  community for similar services by lawyers of reasonably comparable skill, experience,

16  and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Here, Class Counsel's

17  hourly rates are comparable to those approved in this District, and in California in general.

18  *See In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105, at *12

19  (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range

20  from $560 to $800, for associates from $285 to $510, and for paralegals and ligitation

21  support staff from $150 to $240") (citing cases); *see also Bohannon v. Facebook, Inc.*, No.

22  12-cv-1894, 2016 WL 2962109, at *5-6 (N.D. Cal. May 23, 2016) (approving attorney

23  hourly rates of $525-800); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92

24  (N.D. Cal. 2015) (approving attorney rates from $335 - 685); *Klee v. Nissan N. Am., Inc.*,

25  No. 12-cv-08238, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015) (approving rates of

26  $370 to $695); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D.

27  Cal. 2010) (approving rates of $445 – 675).

28

-13-

Class Counsel's detailed fee records are attached to the Drake Declaration, with redactions for privilege.  (Drake Decl., Exs. A-C .)   To date, Counsel's cumulative lodestar is $416,703.04.  (*Id.*)  The lodestar cross-check of the percentage requested thus results in a multiplier of just under 1.5.  Multipliers of 1 to 4 are commonly awarded in complex class action cases in this Circuit.  *See Vizcaino*, 290 F.3d at 1051, n. 6 (finding that in approximately 83% of cases surveyed by the court, the multiplier was between 1.0 and 4.0 and affirming a multiplier of 3.65); *McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976, at *2 (N.D. Cal. 2009) (recognizing a range from "2 to 4 or even higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("[m]ultipliers in the 3-4 range are common"); *Steiner v. American Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming multiplier of 3.65); *McKenzie v. Federal Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (approving multiplier of 3.2).

The lodestar cross-check thus confirms the reasonableness of the requested fee award.

**2.      Class Counsel's Litigation Costs Are Recoverable**

Class Counsel also seek, and Defendants do not oppose, reimbursement of documented, out-of-pocket, expenses incurred in litigating and settling this matter.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client") (internal citations omitted); *Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713, at *3 (N.D. Cal. March 7, 2011) (finding "costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are thus reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs reimbusable); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177-8 (S.D. Cal. 2007) (mediation expenses, expert fees, legal

-14-

1    research, copies, postage, filing fees, messenger, and federal express costs reimbursable);

2    *Marhoefer*, 24 F.3d at 19 (postage costs reimbursable).

3          As Counsel's expense records show, all of the costs incurred were reasonable and

4    necessary to the successful conclusion of this litigation.  (Drake Decl., Exs. A-C.)  These

5    costs include: filing fees, legal research, service of process, expert fees, mediation

6    expenses, deposition and hearing travel, court reporters, and FedEx costs.  These types of

7    expenses are routinely reimbursed by the courts as noted above, thus Counsel's requested

8    costs of $48,035.95 should be awarded.

9                    **B.    THE REQUESTED SERVICE PAYMENTS ARE APPROPRIATE**

10         The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable

11   service awards.  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service

12   awards "are fairly typical in class action cases.").   Such awards are intended to

13   compensate class representatives for work done on behalf of the class, to make up for

14   financial or reputational risk undertaken in bringing the action, and to recognize their

15   willingness to act as private attorneys general.  *Id.* at 958-59.

16         In evaluating requests for service awards, the court should consider "relevant

17   factors including 'the actions the plaintiff has taken to protect the interests of the class, the

18   degree to which the class has benefitted from those actions, . . . [and] the amount of time

19   and effort the plaintiff expended in pursuing the litigation."  *Thieriot*, 2011 WL 1522385

20   at *7 (quoting *Staton*, 327 F.3d at 977).  Here, all of these factors support the requested

21   awards.  Plaintiffs Heaton and Ahlborn have expended significant time and effort in this

22   matter, consistently putting the class members' interests first.  Both of the Plaintiffs met

23   with Class Counsel in person, provided written discovery responses and extensive

24   documentation regarding their experiences with Defendants, stayed abreast of

25   developments in the case, and evaluated the Settlement Agreement.  (*See* Declarations of

26   Shawn Heaton and Anna Ahlborn.)  In addition, Plaintiff Heaton travelled out of state and

27   sat for his deposition, and Plaintiff Ahlborn was scheduled to do the same prior to the case

28

1    settling. (*Id.*) As a result of Plaintiffs' efforts, and their willingness to pursue this action,

2    substantial benefits have been achieved on behalf of the Settlement Class.

3         Moreover, the requested service payments of $7,000 to Plaintiff Heaton and

4    $3,000 to Plaintiff Ahlborn are relatively modest compared to awards granted in other

5    complex litigation in this Circuit. *See, e.g.*, *Razilov*, 2006 WL 3312024 at *2-4

6    (approving incentive award of $10,000); *Ralston v. Mortg. Investors Grp., Inc.*, No. 08-

7    cv-536, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19, 2013) (approving service payment

8    of $12,500); *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801, at *11 (N.D.

9    Cal. March 18, 2013) (approving service awards of $6,000 for each named plaintiff);

10   *Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL 3929129, at *7

11   (N.D. Cal. July 18, 2013) (approving serive awards of $25,000 and $35,000).   The

12   disparity between Plaintiff Heaton's requested award and Plainitff Ahlborn's is in

13   recognition of the fact that Heaton initiated the lawsuit and participated for a longer

14   amount of time than Ahlborn, and spent extra time and effort travelling out of state,

15   preparing and sitting for his deposition. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 646-

16   7 (S.D. Cal. 2011) (approving award of $4,000 for one named plaintiff, and $2,000 to

17   another who was involved for a shorter amount of time).

18        Accordingly, the service awards are fully justified, reasonable, and should be

19   awarded.

20   **V.    CONCLUSION**

21        Based on the foregoing, Plaintiffs respectfully request that the Court grant Class

22   Counsel's requested awards of 25% of the Settlement Fund as attorneys' fees

23   ($625,0000), $48,035.95 in costs, and service payments to Plaintiffs Heaton and Ahlborn

24   of $7,000 and $3,000 respectively.

25   Date: June 30, 2016                    BERGER & MONTAGUE, P.C.
                                            /s/E. Michelle Drake
26                                          E. Michelle Drake (*pro hac vice*)

27                                          ATTORNEYS FOR PLAINTIFFS

28                                   -16-

---